JOHNSON *et al. v.* HARBISON-WALKER MINING CO. *et al.*

No. 10969. FEBRUARY 10, 1936.

*B. F. Walker* and *M. C. Barwick,* for plaintiffs in error.
*Bussey & Fulcher, Casey Thigpen,* and *Hull, Barrett & Willingham,* contra.

WORRILL, Judge. On October 30, 1934, H. Oscar Johnson brought suit against Georgia Power Company, claiming damages in the sum of $10,000 for injuries received by him on September 7, 1934, while in the employment of Harbison-Walker Mining Company, said injuries being alleged to have resulted from the negligence of Georgia Power Company. On February 21, 1935, a verdict was rendered in favor of Johnson against Georgia Power Company in the sum of $1800. A motion for new trial, made by Georgia Power Company, was dismissed on April 13, 1935, and on the same day that company presented its bill of interpleader. The presiding judge entered thereon an order directing that it

be filed, requiring the parties to make their respective defenses, and in the meantime restraining them from instituting any proceeding at law or in equity against Georgia Power Company in connection with said verdict. The bill of interpleader was brought against H. Oscar Johnson, B. F. Walker, M. C. Barwick, and Harbison-Walker Mining Company. It alleged, in substance, the filing of said suit by Johnson against Georgia Power Company, the rendition of the verdict therein, the employment by Johnson of Walker and Barwick as his attorneys under a contract the terms of which were not known by Georgia Power Company, an agreement between Harbison-Walker Mining Company, a self-insurer under the Georgia workmen's compensation law, as employer, and H. Oscar Johnson as employee, under the terms of said law, whereby Harbison-Walker Mining Company had paid or incurred certain medical expenses and compensation to Johnson. The bill referred to certain documents between Georgia Power Company and Harbison-Walker Mining Company relating to installation of electrical equipment on the property of Harbison-Walker Mining Company by Georgia Power Company as having been introduced in evidence in said suit of Johnson against Georgia Power Company, and praying reference thereto; and further alleged that in accordance with the workmen's compensation law, Harbison-Walker Mining Company claimed a larger amount payable to it out of said verdict of $1800 than Johnson, Walker, and Barwick were willing to concede as properly payable to it; that Georgia Power Company was in doubt as to whom and in what amount it should pay; that it would be dangerous for it to decide between said conflicting claims; and that it was entirely indifferent as between the respective claimants, was merely a stakeholder of the funds involved, and was able and willing to fully discharge its liability under said verdict and judgment, but desired to be protected against the jeopardy of double recovery.

Johnson, Walker, and Barwick filed their response, admitting the allegations of facts as stated above, but setting up the defense that no reason existed for the bill of interpleader, because of the contract entered into between Harbison-Walker Mining Company and Georgia Power Company for the installation of said electrical equipment by Georgia Power Company on property of Harbison-Walker Mining Company, by which it was alleged Harbison-Walker

Mining Company agreed to indemnify Georgia Power Company against the very recovery obtained in the case of Johnson against Georgia Power Company, and that the failure of Georgia Power Company to proceed against Harbison-Walker Mining Company was its desire not to offend a customer, and therefore it was in actual collusion with Harbison-Walker Mining Company. Said response denied that any action had been taken against Georgia Power Company by Harbison-Walker Mining Company, and averred that Johnson, Walker, and Barwick should not be required to interplead, because, on April 15, 1935, after the motion for new trial had been dismissed by Georgia Power Company and, before they had knowledge of the order entered on the bill of interpleader Johnson transferred to Barwick and Walker, for value, the judgment and execution issued on said verdict; and that Walker and Barwick had a fifty per cent. contingent fee in the recovery in said suit of Johnson against Georgia Power Company, which was superior to the claim of subrogation of Harbison-Walker Mining Company.

Harbison-Walker Mining Company filed its answer admitting the substantial allegations of the bill of interpleader, but demanding proof of the contract between Johnson and Walker and Barwick and its terms, and of the written contract between Georgia Power Company and Harbison-Walker Mining Company. It alleged that it accepted the provisions of the workmen's compensation law and became a self-insurer thereunder; that on September 7, 1934, Johnson, its employee, sustained an accidental injury arising out of and in the scope of his employment; that Harbison-Walker Mining Company and Johnson entered into a memorandum of agreement as to payment of compensation as authorized by the compensation law, providing for the payment of $7.70 each week during disability as a result of said accident; that pursuant to said agreement Harbison-Walker Mining Company had paid and Johnson had accepted compensation from September 14, 1934, through April 4, 1935, amounting to $223; that immediately following said accident Harbison-Walker Mining Company furnished Johnson medical attention as provided by the compensation law, which was accepted by him, at a cost of $429, pursuant to section 26 of that law; that under section 2(d) of workmen's compensation act (Ga. L. 1922, p. 189; Code, § 114-403) Harbison-Walker

Mining Company was entitled to reimbursement from said verdict and judgment for the compensation which it had paid, amounting to $223.30, and $429.90 medical expenses which it had paid or incurred; that after the payment of said items aggregating $653.20, less the costs chargeable to the bill of interpleader and the proceedings therein, the remainder should be applied in reduction of future payments of compensation, and further payments of compensation by it to Johnson should cease unless and until his disability as a result of said accident of September 7, 1934, continues for such a time that payment of compensation at the rate of $7.70 per week, should the same be paid, would equal the sum of $1146.80.

An order was entered requiring the claimants of the fund to interplead, dissolving the restraining order of April 13, 1935, and providing for the payment by Georgia Power Company of said judgment to Walker and Barwick as the transferees of Johnson, upon their giving bond conditioned to protect the parties ultimately held to be entitled to the fund. To this judgment the plaintiffs in error excepted. The assignments of error in the bill of exceptions are as follows: "1. That no reason exists for said interpleader, because the payment of said verdict to H. Oscar Johnson or his transferees at the time of the filing of the bill of interpleader would have subjected Georgia Power Company to no danger. 2. That said verdict, judgment, and execution had been transferred by H. Oscar Johnson, and the payment thereof to his transferees would have completely discharged Georgia Power Company. 3. That under the contract between Georgia Power Company and Harbison-Walker Mining Company the latter could never have subjected the former to liability, but on the contrary Georgia Power Company could have indemnified itself against Harbison-Walker Mining Company."

The only question before this court for decision is whether or not Georgia Power Company had the right to require interpleader. The only way the respective claims of Johnson and Harbison-Walker Mining Company are involved is merely for the purpose of deciding whether or not the same contain such apparent right to the fund as to cause doubt on part of Georgia Power Company of which claim it should recognize in payment of said verdict and judgment. The Code of 1933, § 37-1503, provides conditions com-

pelling claimants to interplead: "Whenever a person shall be possessed of property or funds, or owe a debt or duty, to which more than one person shall lay claim of such a character as to render it doubtful or dangerous for the holder to act, he may apply to equity to compel the claimants to interplead." Georgia Power Company was possessed of a fund claimed by Johnson and Harbison-Walker Mining Company, each claim of such a character as to render it doubtful or dangerous for Georgia Power Company to act. Johnson's claim was predicated on a common-law execution which empowered him to proceed by levy against the property of Georgia Power Company. Harbison-Walker Mining Company's claim accrued to it by virtue of the workmen's compensation law, to which Harbison-Walker Mining Company, as employer, and Johnson, as employee, were subject at the time of the accident. Section 114-403 of the Code (supra) applies to this case. It provides as follows: "When an employee receives an injury for which compensation is payable under this title, which injury was caused under circumstances creating a legal liability in some person other than the employer to pay damages in respect thereto, the employee or beneficiary may institute proceedings both against that person to recover damages and against the employer for compensation, but the amount of compensation to which he is entitled under this title shall be reduced by the amount of damages recovered. If the employee or beneficiary of the employee in such case recovers compensation under this title, the employer by whom the compensation was paid, or the party who was called upon to pay the compensation, shall be entitled to reimbursement from the person so liable to pay damages as aforesaid, and shall be subrogated to the right of the employee to recover from him to the extent of the compensation." This section provides the right of the employee to claim compensation from the employer, and also to bring action for damages against the third person whose negligence caused his injury; but it also provides that the amount of compensation to which the employee is entitled under the compensation law shall be reduced by the amount of damages recovered. This section further provides the right of the person paying compensation to be subrogated to the right of the employee, and to be reimbursed by the third person held liable to pay damages for the injury. While this section confers on the employee the right

to proceed against the third person causing the injury, it also prohibits a double recovery by him. In the suit for damages brought by Johnson against Georgia Power Company the jury awarded him compensation and made reparation for his injury. He can not recover the full amount of the verdict and judgment against Georgia Power Company and also compensation payable by Harbison-Walker Mining Company under the workmen's compensation law, without obtaining a double recovery and receiving an amount in excess of the full damages and reparation to which the jury held him to be entitled, because this Code section prohibits such double recovery. The Harbison-Walker Mining Company, in order to be entitled to these benefits, is not required to join with the employee or to bring action in its own name. It is a statutory right in its favor which Georgia Power Company could not disregard. It recognized the respective claims of Harbison-Walker Mining Company and Johnson, and filed its bill in equity, making all claimants parties, and praying that they be compelled to interplead. The right of indemnity and subrogation on part of the employer who has paid compensation under the provisions of the workmen's compensation law was recognized by the Court of Appeals in *Branch* v. *Georgia Casualty Co.,* 39 *Ga. App.* 319 (147 S. E. 144), and by the Supreme Court in *Murphy* v. *Holman,* 179 *Ga.* 329 (176 S. E. 5), and again by the Court of Appeals in *Western Union Telegraph Co.* v. *Smith,* 50 *Ga. App.* 585 (178 S. E. 472).

Georgia Power Company in its interpleader set up, among other things, the subrogation and indemnity provisions of the workmen's compensation law, and averred that Harbison-Walker Mining Company, pursuant to the terms of that law, had claimed a larger amount payable to it out of the verdict and judgment than Johnson, Walker, and Barwick were willing to concede as properly payable to Harbison-Walker Mining Company; that Georgia Power Company was in doubt as to whom and in what amounts it should pay said verdict and judgment; and that it would be dangerous for Georgia Power Company to decide between said conflicting claims. Johnson, Barwick, and Walker in their response admitted these allegations. The bill of interpleader was sanctioned contemporaneously with the dismissal of the motion for new trial. In *Perkins* v. *Trippe,* 40 *Ga.* 226, it was held: "Where there is a bill of interpleader, and the defendants answer, admitting on

both sides the fact of the dispute, and the absence of any interest in the stakeholder, the court will, if possible, take such action as will protect the stakeholder, without delay, leaving the parties disputing to litigate between themselves as to their rights." In order for a mere stakeholder to invoke the aid of a court of equity by interpleader, it is not necessary that suits actually be filed by all of the claimants, or that there will necessarily be double liability. One of the objects to be accomplished by the interpleader is to avoid the danger of a double vexation against a single liability. In *Strange* v. *Bell,* 11 *Ga.* 103, 106, it was said: "When two or more persons claim the same thing, by different or separate instruments, and another person, not knowing to which of the claimants he ought of right to render a debt or duty or to deliver property in his custody, fears that he may be hurt by some of them, he may exhibit a bill of interpleader against them. 1 Smith's Chan. 468; Story's Eq. Plead. 237. The bill of interpleader is equally proper, though the party be not actually sued, or be sued by one of the conflicting claimants only, or though the claim of one defendant be actionable at law, and the other in equity. Richards *v.* Salter, 6 Johns. Chan. Rep. 447; Angell *v.* Hadden, 15 Vesey, 244." Again, in *Burton* v. *Black,* 32 *Ga.* 53, 62, it was stated: "The general doctrine is that interpleader lies 'where two or more persons claim the same thing under different titles, or in separate interests, from another person, who, not claiming any title or interest therein himself, and not knowing to which of the claimants he ought of right to render the duty claimed, . . is either molested by an action or actions brought against him, or fears he may suffer injury from the conflicting claims of the parties against him. He therefore applies to a court of equity to protect him, not only from being compelled to pay or deliver the thing claimed, to both the claimants, but also from the vexation attending upon the suits, which are or possibly may be instituted against him.' 2 Story's Equity Jur. § 806."

In *Western & Atlantic Railroad Co.* v. *Union Investment Co.,* 128 *Ga.* 74 (57 S. E. 100), one Maner was due certain wages by the railroad company and had executed certain instruments purporting to assign certain sums to be paid therefrom. The assignees notified the railroad company of their respective claims, and various other creditors were pursuing the fund by garnishment. The

railroad company filed its bill of interpleader; and the court, in considering the propriety of this action said: "In such event the fund would be a common fund in which they would be severally interested. It appears that they derive whatever interest they have from the same source, to wit, from Maner. The proper method of enforcement of their claims is by making all parties at interest parties in one suit in a court of competent jurisdiction, to the end that each may assert his rights and render more certain the administration of justice. Maner could not himself have divided his claim into many parts and instituted separate suits at law against his employer. *Rivers* v. *Wright*, 117 *Ga.* 81 (43 S. E. 499); *Reviere* v. *Chambliss*, 120 *Ga.* 714 (48 S. E. 122). It follows that, in the absence of consent by his employer, Maner could not accomplish the same thing by assignments in small parts to others, thus allowing them to maintain several suits. Being a mere stakeholder without any interest in the fund, and being shown not to be in collusion or otherwise at fault, in view of the nature of the claims asserted by the various parties to the fund in controversy by assignment and by garnishment, this, under the Civil Code, § 4896, is a proper case for the intervention of a court of equity, by injunction and appropriate orders requiring the various contestants to interplead as prayed." In the present case Walker and Barwick were claiming a certain interest in the judgment by reason of their services as attorneys for Johnson. In *City of Atlanta* v. *McDaniel*, 96 *Ga.* 191 (22 S. E. 896), similar claims were made by an attorney to a fund in the hands of a third party. Jenkins was employed as attorney by McDaniel. The court said: "The City of Atlanta owed at least a portion of the money it held to one of two persons laying claim to the same; and we think it clearly appears that these adverse claims were of such a character as to render it at least doubtful who was best entitled to receive the fund in controversy. It seems evident that Jenkins had a lien upon this fund because of professional services rendered. The precise amount to which he was entitled was, however, under the conflict presented by the evidence, purely a question for a jury. The city could not safely, therefore, pay all the money held up to McDaniel; nor could it safely pay to Jenkins a sum greater than he was rightfully entitled to receive. Under these circumstances, we can not hold that it was incumbent upon

the city, at its own risk, to undertake to adjust the conflicting claims between these contending parties. In other words, we think the above cited section of the Code was intended for just exactly such a case as this."

On the trial of interpleader each of the claimants occupies the position of plaintiff, and must recover on the strength of his own title rather than on the weakness of the other's title. In *Conway* v. *Caswell*, 121 *Ga.* 254, 259 (48 S. E. 956, 2 Ann. Cas. 269), it was stated: "In interpleaders both claimants are in a position similar to that of plaintiffs in other posesssory actions, where the recovery must be on the strength of their own title rather than on the weakness of their adversary's title. Civil Code, § 5004." In *Edmondson* v. *Farmers & Merchants Bank*, 29 *Ga. App.* 491 (115 S. E. 924), the court held: "A purchaser of personal property encumbered with a lien is protected only when he purchases bona fide, for value, without notice of the lien or of such facts as would put him on notice of the existence of the lien." When a similar question was presented in *Crain* v. *Carter*, 158 *Ga.* 428 (123 S. E. 699), this court said: "He who takes with notice of an equity takes subject to that equity." In view of the foregoing authorities, and the fact that Johnson, Walker, and Barwick knew of the claim of subrogation of Harbison-Walker Mining Company, and were actually refusing to recognize it, the subrogation right was not defeated merely by a transfer of the judgment to the parties having full knowledge and notice of such claim.

The plaintiffs in error apparently rely mainly on the recent decision of the Court of Appeals in *Travelers Insurance Co.* v. *Georgia Power Co.*, 51 *Ga. App.* 579 (181 S. E. 111). That decision dealt with the liability of a defendant in execution, after the payment of the execution, to respond to a claim asserted by the employer on the theory of subrogation. The execution was paid in full and canceled before any effort was made by the employer to assert a subrogated right against the Georgia Power Company. In the present case the Georgia Power Company, confronted with probable garnishments and other litigation, attempted to have adjudicated the outstanding claims against it in a single action, for the purpose of protecting itself against such liability and avoiding a complicated legal situation. The decision rendered in *Travelers Insurance Co.* v. *Georgia Power Co.*, while distin-

guishable on its facts, does establish that payment of an execution by a tort-feasor relieves it of liability to an employer asserting a claim by subrogation under the Georgia workmen's compensation law, where such claim is not asserted until after payment has been made. That decision, however, does not establish that, before the payment and discharge of the execution, the defendant tort-feasor would not be liable to garnishment and at the same time have its property subject to levy under an outstanding execution. With the two claims outstanding, a prudent and careful defendant is entitled to the assistance of a court of equity to finally adjudicate such claims before subjecting itself to the risk of litigation with two separate parties. Harbison-Walker Mining Company having been accorded the right of subrogation and indemnity by the provisions of the workmen's compensation law, and such right having been recognized by the courts, it can not be defeated by Johnson by transferring the judgment to Walker and Barwick, who had notice of its rights. Harbison-Walker Mining Company having claimed an interest in the judgment, and Johnson, Walker, and Barwick having done likewise, the Georgia Power Company was entitled to the remedy to which it resorted, namely its equitable interpleader, so that all of the claimants might be brought before the court and there required to assert their respective claims, avoid a multiplicity of suits, and relieve Georgia Power Company, a mere stakeholder, of the hazard and expense of vexatious litigation for the establishment of a single liability. Therefore the judge did not err in his order allowing the bill of interpleader and in directing the claimants to interplead.

*Judgment affirmed. Justices Gilbert and Bell, and Judges Worrill, Graham, and Gardner concur. Presiding Justice Beck absent because of illness.*